**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**


**MARY A. ESTELLE MALLORY,**
    **Plaintiff,**

v.                                                  **3:04cv90/MCR**

**DONALD H. RUMSFELD,**
**in his capacity as**
**SECRETARY OF DEFENSE,**
    **Defendant.**
_____/

**O R D E R**

    Plaintiff Mary A. Estelle Mallory ("Mallory" or "plaintiff") sues defendant Donald H. Rumsfeld ("the government" or "defendant") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., claiming racial discrimination and retaliation in employment. (Doc. 1).[1] Presently before the court is defendant's motion for summary judgment (doc. 39, with exhibits; statement of facts and exhibits at doc. 40), to which plaintiff filed a response in opposition (doc. 43, amended at doc. 45).[2] Plaintiff has also

---

[1] Plaintiff's three-count complaint also contains a claim brought pursuant to the Federal Privacy Act of 1974, 5 U.S.C. § 552a, which is identified as Count Three. Pursuant to a one-sentence statement contained in a June 15, 2005, trial memorandum (doc. 27 at 6), plaintiff represented that she did not intend to pursue this claim. (Doc. 27 at 6). Additionally, plaintiff has not addressed the claim in her response to the pending motion for summary judgment, which motion likewise does not mention Count Three. Accordingly, although plaintiff has not filed any formal notice withdrawing Count Three, the court deems the claim to have been abandoned and therefore shall dismiss it with prejudice.

[2] Plaintiff's response to defendant's motion for summary judgment was due October 17, 2005, but was not submitted until October 21, then amended October 23. (See docs. 42, 43, 45 and N.D.Fla.Loc.R. 56.1(B)). Because the court previously granted defendant leave to file his motion for summary judgment out-of-time and shall do so with respect to the affidavit of Ms. Nichols, the court shall likewise grant plaintiff leave to file her response out-of-time.

filed a "Second Motion to Strike Statement Signed By JoAnn Nichols in Support of Defendant's Summary Judgment Motion" (doc. 50), which defendant opposes (doc. 51). For the reasons that follow, the court DENIES plaintiff's motion to strike and GRANTS defendant's motion for summary judgment in part and DENIES it in part.

**BACKGROUND**

The following facts are viewed in the light most favorable to plaintiff or, except as noted, are undisputed.[3] Mallory is an African-American.  At the time of initiating this action in March 2004 she had been employed by the United States through its Defense Finance and Accounting Service ("DFAS") for approximately ten years and was based at the DFAS branch office located in Pensacola, Florida. (Doc. 1, ¶ 3).  In July 1996 plaintiff applied for the position of Accounting Technician GS-525-06, DFAS Pensacola, as advertised in Vacancy Announcement #128 of 1996 ("VA #128").[4]  (Doc. 1, ¶ 5; doc. 40, Exh. 1).  Forty-seven persons applied for the "several" positions advertised in the announcement, of which thirty-five applicants – including plaintiff – were determined to be eligible for selection.[5]  (Id., Exhs. 3, 4).

The DFAS Merit Promotion and Internal Placement Manual ("the Manual") establishes the procedures for consideration of applications for competitive service positions such as  Accounting Technician GS-525-06.  (Id., Exh. 5).  Section D of Chapter 3 of the Manual provides that selections must be made from among the "best available candidates," with "[j]ob related evaluation criteria" based on a job analysis to be used to

---

[3] At summary judgment the court must view the facts in the light most favorable to the nonmoving party. See  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The court therefore does so here, drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. See Montount v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

[4] The announcement noted an opening date for filing applications of June 27, 1996, and a closing date of July 8, 1996. It also stated that, among other qualifications, applicants must meet the time-in-grade requirement of having worked at least fifty-two weeks as a GS-5 or higher in federal service.  There is no dispute that as of January 1996 plaintiff had worked as an accounting technician at the GS-5 grade for more than four years. (Doc. 1 at 3; doc. 43 at 1).

[5] Some of the documents of record which are relevant to VA #128 refer to plaintiff as "Mary A. Estelle."

identify "highly qualified candidates." (Id., p. 3-6). The job analysis consists of a review of the position to determine the major duties required and to identify essential knowledge, skills, and abilities ("KSAs") necessary for the position. (Id.). Section E of the Manual provides that eligible applicants shall be classified as "Qualified" (candidates who meet qualification standards for the position but achieve a rating less than specified for "Highly Qualified"); "Highly Qualified" (candidates who substantially exceed qualification standards for the position); and "Best Qualified" (candidates "who . . . are the top rated candidates referred to the selecting official (normally, the group would be highly qualified; however, where there are limited available candidates, the group may contain a mixture of highly qualified and qualified candidates."). (Id., p. 3-8). The Manual provides a rating plan under which the evaluator assigns a numerical score of from one to four points for each relevant KSA and the applicant's annual performance rating, then averages the total points awarded. (Id., pp. 3-7, 3-9). Pursuant to Section F of Chapter 3, after the final evaluation is completed a list of candidates is referred to the "selecting official." The number of best qualified candidates normally will not exceed fifteen names for one vacancy plus one additional name for each additional vacancy to be filled. (Id., p. 3-10). "The obvious or clear standouts among the highly qualified candidates will be referred as best qualified." (Id.). When a "clear break in the average score exists" a "cut-off" will be made. (Id.). The selecting official must base his selection on job-related factors; he is "not required to make a selection from the competitive referral list" but may fill the job by "some other type of internal action or by appointment outside the agency." (Id., p. 3-11).

DFAS Personnel Assistant JoAnn Nichols was tasked with the duty of processing the applications for VA #128, including rating and ranking all eligible candidates pursuant to the procedures set forth in the Manual. (Doc. 49, affidavit of JoAnn Nichols, ¶¶ 4, 6).[6] Ms. Nichols, an African-American, was based in the Cleveland, Ohio, DFAS office at the time she conducted her evaluations for VA #128; she was not acquainted with any of the

---

[6] The court granted plaintiff's first motion to strike Ms. Nichols' affidavit on the ground it was technically deficient in form but permitted the government to refile the affidavit after correction. Plaintiff then filed a second motion to strike the affidavit which, for reasons given below, the court denies. It is the corrected affidavit upon which the court relies.

Case No. 3:04cv90/MCR

applicants, and she "was not aware of their race nor was [she] aware if any of them had any prior EEO [Equal Employment Opportunity] activity." (Id., ¶ 10). After she rated and ranked the applicants, Ms. Nichols prepared a list dated October 31, 1996, which contained the names of the best qualified candidates based on a final rating cut-off score of 3.0. (Doc. 40, Exh. 6). Plaintiff's final rating score was 2.75, and thus Ms. Nichols did not include her on the best qualified candidates list. (Id., Exhs. 6, 7). The list was referred to selecting official DFAS Deputy Director Travis Bryan for the selection of candidates for the vacancies. According to Ms. Nichols, Mr. Bryan was not permitted "to select anyone not on that list, without prior clearance from Personnel." (Doc. 48, ¶ 9). A memorandum signed by Mr. Bryan on December 3, 1996, announced the names of fifteen employees from the list who had been chosen for promotion, of whom two were African-American. (Id., Exhs. 8, 9, 10).

In December 1996 plaintiff learned that she had not been selected for a position offered pursuant to VA #128 or any other available vacancy during the period covered by her July 1996 application. (Doc. 1 at 3-4). Plaintiff submitted applications for promotions in 1997, 1999, 2000, and 2001 but none was successful, notwithstanding that in every instance she was either rated "best qualified" or "highly qualified." (Id. at 4). Plaintiff pursued a complaint with the Equal Employment Opportunity Commission regarding her claim of repeatedly being denied opportunities for promotion.[7] In December 2003, following the conclusion of administrative proceedings, the Commission issued plaintiff a Notice of Right to Sue. (Id.). Plaintiff proceeded to timely file the instant action pursuant to Title VII alleging unlawful racial discrimination and retaliation and seeking as relief a declaratory judgment, compensatory damages for mental suffering, and attorneys' fees and costs. (Id. at 5).

---

[7] In her response to the motion for summary judgment plaintiff states "there is no dispute that [she] filed EEO complaints in 1994 through 1997 . . . ." (Doc. 43 at 6). Although there is no dispute that plaintiff filed an EEO complaint with respect to VA #128, the court located no evidentiary support in the record for plaintiff's assertion that she filed EEO complaints in 1994, 1995, or 1997 or with respect to applications filed in those years.

Case No. 3:04cv90/MCR

**SUMMARY JUDGMENT STANDARD**

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A factual dispute is "`genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 LED. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." Anderson, 477 U.S. at 248; Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Nevertheless, a general denial unaccompanied by any evidentiary support will not suffice. See, e.g., Courson v. McMillian, 939 F.2d 1479 (11th Cir. 1991); Hutton v. Strickland, 919 F.2d 1531 (11th Cir. 1991). Moreover, the existence of a scintilla of evidence in support of the nonmovant's position is insufficient; the test is "whether there is [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson v. Liberty Lobby, Inc., 477 U.S. at 252.

**DISCUSSION**

<u>Motion to Strike</u>

Plaintiff moves to strike the corrected affidavit of JoAnn Nichols (doc. 49), filed in connection with defendant's motion for summary judgment, on the ground defendant filed the affidavit on October 30, 2005, when the affidavit was due no later than October 28, 2005. (See doc. 48). Defendant has responded in opposition. (Doc. 52).

The corrected affidavit indeed was untimely filed. Moreover, this is not the first time – or even the second time – in this case that defense counsel has displayed similar disregard for the court's deadlines. Rather, the government has done so repeatedly, much

to the dismay of the court, a sentiment that extends in a lesser degree to plaintiff's counsel who has also on occasion failed to act in a timely manner. The court expects both counsel to be fully prepared and focused on this case when trial begins on November 28, 2005. In any event, with respect to the instant concern, finding that there is no prejudice to plaintiff in the late filing of Ms. Nichols' corrected affidavit and that it is in the interest of justice to do so, the court shall consider the affidavit. The court therefore grants the government leave to file the corrected affidavit out-of-time and denies plaintiff's motion to strike.

The court also rejects plaintiff's contention that the exhibits attached to defendant's statement of material facts should be stricken for lack of authentication. Plaintiff does not in fact make any claim of inauthenticity or, for that matter, inadmissibility based on other grounds. Furthermore, the demand to strike is not timely brought and, contrary to plaintiff's apparent contention, the "source of the relied upon material fact[s]" is adequately identified, as set forth in N.D.Fla.Loc.R. 56.1.

<u>Count One: Race Discrimination Pursuant to Title VII</u>

Title VII makes it unlawful for an employer to discriminate against its employees based upon certain protected traits, including race, color, national origin, sex, and religion. <u>See</u> 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff can prove intentional discrimination with direct or statistical evidence. <u>See</u> <u>Corbin v. Southland Int'l Trucks</u>, 25 F.3d 1545, 1548 (11th Cir. 1994). In the absence of direct evidence or statistical evidence, the plaintiff may rely on circumstantial evidence to prove her claim pursuant to the <u>McDonnell Douglas</u> burden shifting analysis. <u>See</u> <u>McDonnell Douglas Corp. v. Green,</u> 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973). Under this analysis, the plaintiff must first establish a prima facie case of discrimination. <u>See</u> <u>Chambers</u>, 132 F.Supp. 2d at 1365 (<u>citing</u> <u>McDonnell Douglas</u>, 411 U.S. at 802 & n.13). A prima facie case requires the plaintiff to show that: "(i) he or she belonged to a protected class; (ii) he or she was qualified for and applied for a position that the employer was seeking to fill; (iii) despite qualifications, he or she was rejected; and (iv) the position was filled with an individual outside the protected class." <u>Vessels v. Atlanta Indep. Scho. Sys.</u>, 408 F.3d 763, 768 (11th Cir. 2005) (<u>citing</u> <u>McDonnell</u>

Douglas Corp., 411 U.S. at 802). Plaintiff need only "establish facts adequate to permit an inference of discrimination." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). She cannot, however, "'rely on attenuated possibilities that a jury would infer a discriminatory motive, but rather must come forward with sufficient evidence to establish a prima facie case[.]'" Chambers, 132 F.Supp. 2d at 1365 (quoting Pace v. Southern Railway System, 701 F.2d 1383, 1391 (11th Cir. 1983)). Conclusory assertions and personal opinions, without more, are not sufficient evidence. See Holifield, 115 F.3d at 1564 & n.6.

Once the plaintiff presents a prima facie case of discrimination, a rebuttable presumption of discrimination arises. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed. 2d 407 (1993). The burden then shifts to the defendant to rebut the presumption of discrimination by presenting legitimate, non-discriminatory reasons for its employment decision. See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); Wu v. Thomas, 847 F.2d 1480, 1483-84 (11th Cir. 1988). The Eleventh Circuit has described the defendant's burden at this stage as "exceedingly light." Turnes v. AmSouth Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). If the defendant meets its burden, the plaintiff must then demonstrate that the reasons articulated by the defendant for its conduct are a mere pretext for discrimination. McDonnell Douglas Corp., 411 U.S. at 804; Holifield, 115 F.3d at 1565. "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004) (quoting Chapman v. AI Transportation, 229 F.3d 1012, 1024 (11th Cir.2000) (en banc) (internal quotation marks omitted)). The burden of showing that defendant's reasons are pretextual merges with plaintiff's ultimate burden of establishing that the defendant intentionally discriminated against the plaintiff. St. Mary's Honor Center, 509 U.S. at 511. Indeed, "[n]o matter the form of proof . . . '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" Chambers v. Walt Disney World

Co., 132 F.Supp.2d 1356, 1363 (M.D. Fla. 2001) (quoting Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

In the instant case, plaintiff relies upon circumstantial evidence to establish a prima facie case of intentional discrimination. The court is satisfied that she has done so.  First, it is undisputed that plaintiff, an African-American, belongs to a protected class; that she was qualified to perform the duties of the position advertised in VA #128 and filed an application for that job; and that despite her qualification for the position she was rejected. Furthermore, plaintiff has submitted documentary evidence in support of her contention that fellow employee Caridad Florita, who applied for and was selected for the position, in fact was not eligible or qualified for selection because she did not possess the fifty-two weeks of experience at the GS-5 level required by VA #128.  (See docs. 43, 45).  Thus plaintiff has adequately demonstrated that the position was filled with a person outside her protected class.[8]

Next, the court considers whether the government has met its burden of coming forward with a legitimate, non-discriminatory reason for its decision not to select plaintiff for the accounting technician position.  As noted above, the Manual provides that selection must be made from among the "best available candidates," (doc. 40, Exh. 5, p. 3-6), with the "[t]he obvious or clear standouts among the highly qualified candidates" to be "referred as best qualified."  (Id., p. 3-10).  Moreover, the Manual authorizes the use of cut-of scores to narrow the field of candidates.  (Id.).  In this case, the October 31, 1996, referral list prepared by Ms. Nichols contained the names of the twenty-eight best qualified candidates based on the evaluation cut-off score of 3.0 (id., exh. 6); because plaintiff's score – which she has not challenged – was only 2.75, she did not make the "cut."  The court therefore concludes that the government has met its "exceedingly light" burden of coming forward

---

[8] Plaintiff alleges in her complaint that an individual named Betty Price and three other unnamed persons – none of whom are African-Americans –  were selected for the accounting technician positions for which plaintiff applied even though, as least as to the latter three persons, they did not meet the time-in-grade requirements of VA #128. (See doc. 1 at 2-3). In her response to defendant's motion for summary judgment plaintiff identifies two persons lacking the requisite time-in-grade, Ms. Florita and Theresa Flinn. Plaintiff did not submit any evidence in support of her allegations regarding Ms. Flinn, however.  Accordingly, the court finds that, with respect to Ms. Flinn, plaintiff has not demonstrated that defendant gave more favorable treatment to a similarly situated individual outside her protected classification.

Case No. 3:04cv90/MCR

with a legitimate, non-discriminatory reason for the decision not to select plaintiff for the accounting technician position. Turnes, 36 F.3d at 1061.

Finally, the court considers plaintiff's contention that the government's reason for her non-selection is pretextual. First, plaintiff asserts that because the evidence shows that Ms. Nichols signed a personnel action form for Ms. Florita in July 1996 she must have been aware that Ms. Florita did not meet VA #128's time-in-grade requirement and thus was not eligible for the position. Second, plaintiff contends that the evidence reflects Mr. Bryan "pre-selected" Ms. Florita for the GS-6 position.[9]

The Eleventh Circuit has noted that "both the Supreme Court and this court have observed that evidence showing an employer hired a less qualified applicant over the plaintiff may be probative of whether the employer's proffered reason for not promoting plaintiff was pretextual." Alexander v. Fulton County, 207 F.3d 1303, 1340 (11th Cir. 2000). Furthermore, evidence that an employer violated its own normal hiring procedure may be probative of pretext. See Bass v. Board of County Commissioner, Orange County, Fla., 256 F. 3d 1095, 1108 (11th Cir. 2001) (citing Hill v. Seaboard Coast Line R.R., 885 F.2d 804, 811 (11th Cir. 1989)). In this case, plaintiff has come forward with documentary evidence which indicates that Ms. Florita was less qualified than Ms. Mallory, in that Ms. Florita did not have fifty-two weeks experience at the GS-5 level as VA#128 requires. From such evidence it is also possible that a jury could conclude that Ms. Nichols did not, as she avers in her affidavit, prepare "the Best Qualified list in accordance with the existing regulations . . . ." (doc. 40, ¶ 11), and thus deviated from the DFAS' normal hiring practices. There is also documentary evidence showing that Ms. Nichols signed a personnel action form for Ms. Florita in July 1996 which involved her grade and step promotion. If a jury were to determine that Ms. Nichols was in fact aware of the deficiency in Ms. Florita's

---

[9] Exhibit A of plaintiff's amended exhibits (doc. 45) indicates that in January 1996 the DFAS director authorized Ms. Florita's temporary promotion from the GS-4 to the GS-5 level. According to plaintiff, prior to the expiration of her temporary promotion, Ms. Florita was selected for a GS-5/1 position pursuant to Vacancy Announcement # 6 of 1996. As shown on Exhibit C, Ms. Nichols signed a personnel action form in July 1996 which corrected the level of Ms. Florita's promotion to GS-5/2, effective retroactively from March 18, 1996. Exhibit C reflects that on May 20, 1996 – which was several months prior to the opening date for VA #128 – Mr. Bryan and his supervisor requested that Ms. Florita be promoted from GS-5/2 to GS-6/1, a promotion which was approved on December 18, 1996, ostensibly pursuant to her selection for VA #128.

Case No. 3:04cv90/MCR

application but nevertheless placed Ms. Florita's name both on the list of eligible candidates and on the best qualified list for selection by Mr. Bryan, it could find the government's reason for rejecting Ms. Mallory's candidacy a pretext for a discriminatory employment decision.[10]  Furthermore, if the jury concluded that the evidence shows Mr. Bryan "pre-selected" Ms. Florita for the GS-6 accounting technician position, such conduct would not be in accordance with the government's normal hiring practices, as set forth in the Manual. In sum, based on the limited record before it the court concludes that the reasons advanced by plaintiff are sufficient to demonstrate a genuine issue of material fact as to whether "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" exist in the government's proffered explanation for not selecting plaintiff that a jury could deem the reason a pretext for discriminatory conduct. Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997).

In conclusion, the court finds that plaintiff has met her burden of setting forth a prima facie claim of discrimination and that the government has met its burden of showing a legitimate, non-discriminatory reason for the disputed employment action.  The court finds, however, that plaintiff has come forward with evidence sufficient to establish a genuine issue of material fact as to whether the government's proffered reason for its hiring decision is mere pretext. Accordingly, the court DENIES defendant's pending motion for summary judgment as to Count One.

Count Two:  Retaliation Pursuant to Title VII

In addition to prohibiting employers from discriminating on the basis of race, Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under

---

[10] The court notes Ms. Mallory's assertion that her "application for the GS-6 position was rated lower than white applicants who possess less experience and education than she . . . ." (Doc. 43 at 6). This vague, unsupported assertion is entirely insufficient to create a genuine issue of material fact, either as to plaintiff's claim of discrimination or her claim of retaliation.  Plaintiff has neither identified the white applicants whom she references nor submitted any evidence which demonstrates that she was treated differently from such persons.

Case No. 3:04cv90/MCR

this subchapter." 42 U.S.C. § 2000e-3(a). In order to establish a prima facie case of retaliation, the plaintiff must show: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between her protected activity and the adverse employment action. See Stavropoulos v. Firestone 361 F. 3d 610, 616 (11th Cir. 2004) (citing Bass, 256 F. 3d at 1117); Gupta v. Florida Board of Regents, 212 F.3d 571, 587 (11th Cir. 2000). Similar to a claim of discrimination, once a plaintiff has established a prima facie of case of retaliation the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. See Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). If that burden is met, the plaintiff then bears the ultimate burden of proving that the reason provided by the employer is a pretext for retaliatory conduct. Id.; Meeks v. Computer Associates Int'l., 15 F.3d 1013, 1021 (11th Cir.1994).

      In the instant case, the court concludes that plaintiff has failed to establish a prima facie case of retaliation. As discussed above, plaintiff suffered an adverse employment action in the form of being denied selection for the GS-6 accounting technician position in 1996. Plaintiff has not established that she took part in protected activity prior to suffering the adverse employment action, however, as she has failed to come forward with evidence showing that she engaged in EEO activity in 1994 or any time prior to applying for VA #128 in 1996. (See n.7, supra). Regardless, even assuming that plaintiff had met this burden, the court concludes that she is unable to establish the necessary causal connection between participation in that protected activity and the adverse employment action. A "plaintiff need only show that the protected activity and the adverse action were not wholly unrelated" and can make that showing by establishing "that the decision maker was aware of the protected conduct at the time of the adverse employment action." Brungart v. BellSouth Telecommications, Inc., 231 F.3d 791, 799 (11th Cir. 2000) (quotations omitted). Indeed, "[t]hat requirement rests upon common sense. A decision maker cannot have been motivated to retaliate by something unknown to him." Id.; see also Raney v. Vinson Guard Service, Inc., 120 F.3d 1192, 1196 (11th Cir. 1997) (noting that it is not enough for plaintiff to show that someone in the organization knew of the protected expression but

rather must show that the person who took the adverse action was aware of the protected expression).  In this case, Ms. Nichols avers in her affidavit, without contradiction, that at the time of rating and ranking the candidates she was unaware of any prior EEO activities by them. (Doc. 49, ¶ 10).  Moreover, any temporal proximity between the 1994 EEO action alleged by plaintiff in her complaint and the 1996 employment decision – as to either Ms. Nichols or Mr. Bryan – is far too attenuated to establish a prima facie case of retaliation. See Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) (quotation and marks omitted) (finding a delay of three months between the protected activity and the adverse employment action to be insufficient).  For these reasons, the court GRANTS defendant's pending motion for summary judgment as to Count Two.

Accordingly, it is ORDERED:

1. Plaintiff is GRANTED leave to file her response to defendant's motion for summary judgment out-of-time.

2. Defendant is GRANTED leave to file the corrected affidavit of JoAnn Nichols out-of-time.

3. Plaintiff's "Second Motion to Strike Statement Signed By JoAnn Nichols in Support of Defendant's Summary Judgment Motion" (doc. 50) is DENIED.

4. Defendant's motion for summary judgment (doc. 39) is GRANTED in part and DENIED in part:

    a. As to Count One, the motion is DENIED.

    b. As to Count Two, the motion is GRANTED.

5. Counts Two and Three are DISMISSED with prejudice.

DONE and ORDERED this 1st day of November, 2005.

s/ *M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

Case No. 3:04cv90/MCR